**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-00128-CMA

RICHARD LEE MARTINEZ,

       Applicant,

v.

KEVIN MILYARD, Warden, Sterling Correctional Facility, and
JOHN SUTHERS, the Attorney General of the State of Colorado,

       Respondents.

---

## ORDER DENYING 28 U.S.C. § 2254 APPLICATION

---

       Applicant, Richard Lee Martinez, is a prisoner in the custody of the Colorado

Department of Corrections (DOC) who currently is incarcerated at the Sterling,

Colorado, correctional facility.  He initiated the instant action by filing *pro se* an

Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 challenging the

validity of his convictions and sentences in Montrose County, Colorado, district court

Case Nos. 97CR127 and 97CR180.

       On February 29, 2008, Respondents filed an answer to the application.

On March 18, 2008, Applicant filed a traverse.  On October 22, 2008, the action was

reassigned.  On February 17, 2010, the Court ordered the state court record, which

was filed with the Court on March 11, 2010.

       The Court must construe liberally Mr. Martinez's filings because he is not

represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v.*

*Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. After reviewing the entire file, the Court finds that an evidentiary hearing is not necessary. For the reasons stated below, the Court will deny the application.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Martinez currently is in DOC custody pursuant to three separate convictions: Montrose County District Court Case Nos. 97CR127and 97CR180, and Mesa County, Colorado, district court Case No. 99CR486. The instant action only concerns Montrose County District Court Nos. 97CR127and 97CR180. Mesa County District Court Case No. 99CR486 is the subject of a separate habeas corpus action Mr. Martinez initiated in this Court. *See Martinez v. Milyard*, No. 07-cv-00617-CMA (D. Colo. Mar. 17, 2010), *appeal filed*, No. 10-1112 (10th Cir. Mar. 23, 2010).

In No. 97CR127, Mr. Martinez was convicted of attempted first-degree sexual assault, sexual assault on a child, and four habitual criminal counts. The offenses rose from Mr. Martinez's attempt to have sexual intercourse with his sixteen-year-old biological daughter. The trial court sentenced him to sixteen years of imprisonment.

His convictions and sentences in No. 97CR127 were affirmed on direct appeal. *See People v. Martinez*, No. 98CA0386 (Colo. Ct. App. Dec. 9, 1999) (not published) (Answer, Ex. D) (*Martinez I*). On April 10, 2000, certiorari review was denied. *See* Aswer, Ex. F.

His convictions and sentences in No. 97CR127 also were affirmed on appeal in three postconviction attacks. *See People v. Martinez*, No. 00CA1781 (Colo. Ct. App. June 21, 2001) (not published) (Answer, Ex. R); *People v. Martinez*, No. 01CA2131 (Colo. Ct. App. Feb. 20, 2003) (not published) (Answer, Ex. W); and *People v. Martinez*, Nos. 04CA1760 and 05CA1593 (Colo. Ct. App. Mar. 22, 2007) (not published) (Mr. Martinez's consolidated appeal from the denial of his third postconviction motion in No. 97CR127 and first postconviction motion in No. 97CR180) (Answer, Ex. BB). On July 16, 2007, his petition for certiorari review from the appeal of his third post-conviction motion was denied. *See* Answer, Ex. DD.

In No. 97CR180, Mr. Martinez was convicted on two counts of second-degree sexual assault, one count of attempted second-degree sexual assault, one count of first-degree sexual assault, and one count of second-degree burglary. The offenses arose from Mr. Martinez's sexual assault of another woman. The trial court sentenced him to fifty-nine years of imprisonment, to be served consecutively to the sentences in No. 97CR127. His convictions and sentences were affirmed on direct appeal. *See People v. Martinez*, No. 98CA2518 (Colo. Ct. App. Apr. 26, 2001), published at *People v. Martinez*, 36 P.3d 154 (Colo. Ct. App. 2001) (Answer, Ex. K) (*Martinez II*). On December 17, 2001, certiorari review was denied. *See* Answer, Ex. M.

In 2003, Mr. Martinez filed in No. 97CR180 a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure alleging ineffective assistance of counsel. *See* Answer, Ex. BB at 2. On June 30, 2004, while his Colo. R. Crim. P.

35(c) motion was pending in the trial court, he filed *pro se* a postconviction motion alleging that his aggravated sentence was unconstitutional under *Blakely v. Washington*, 542 U.S. 296 (2004). *See* Answer, Ex. BB at 2. On July 20, 2004, the trial court denied the motion, finding that *Blakely* did not apply retroactively to Mr. Martinez's convictions. *Id.* at 2-3. Following a hearing on the ineffective-assistance-of-counsel claims, the trial court denied Mr. Martinez's Colo. R. Crim. P. 35(c) motion. *Id.* at 3. The consolidated appeal in Nos. 04CA1760 and 05CA1593 (Answer, Ex. BB) followed, in which the state appeals court affirmed the denial of Mr. Martinez's motions challenging his sentence under *Blakely* and alleging ineffective assistance of counsel. On July 16, 2007, his petition for certiorari review was denied. *See* Answer, Ex. DD.

In the application, Mr. Martinez asserts claims pertinent to both Nos. 97CR127 and 97CR180. Concerning No. 97CR127, Mr. Martinez complains that the trial court erroneously:

(1)  allowed him to waive his right to counsel, and

(2)  did not grant him a continuance.

Concerning No. 97CR180, Mr. Martinez complains that the trial court erroneously:

(3)  admitted other acts evidence,

(4)  admitted statements he made during the course of plea negotiations,

(5)  did not instruct the jury on the defense of consent, and

4

(6)     gave an inadequate limiting instruction on the other
acts evidence.

Mr. Martinez also complains that in No. 97CR180,

(7)     his trial counsel was ineffective.

Respondents concede that the instant action was filed in a timely manner, *i.e.*,
within the one-year limitation period in 28 U.S.C. § 2244(d).  Therefore, the Court need
not address further the one-year limitation period.

## II.  EXHAUSTION OF STATE COURT REMEDIES AND PROCEDURAL BAR

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus
may not be granted unless it appears that the applicant has exhausted state remedies
or that no adequate state remedies are available or effective to protect the applicant's
rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kansas State
Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  The exhaustion requirement is
satisfied once the federal claim has been presented fairly to the state courts.  *See
Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Fair presentation requires that the
federal issue be presented properly "to the highest state court, either by direct review of
the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.  Federal habeas
corpus relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67
(1991) (internal quotation marks and citations omitted).  "[I]t is not the province of a
federal habeas court to re-examine state court determinations on state law questions.
In conducting habeas review, a federal court is limited to deciding whether a conviction
violated the Constitution, laws, or treaties of the United States."  *Id.* at 67-68.

Furthermore, the "substance of a federal habeas corpus claim" must have been presented to the highest state court in order to satisfy the fair presentation requirement. *Picard v. Connor*, 404 U.S. 270, 278 (1971); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989). Although fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*). A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (*per curiam*).

Finally, "[t]he exhaustion requirement is not one to be overlooked lightly." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995). A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

### III.  CLAIMS

#### A.    CLAIM ONE

Respondents contend that Mr. Martinez failed to exhaust his first claim, *i.e.*, that he did not validly waive his right to counsel in No. 97CR127 because he had informed the trial court he had been diagnosed with a mental disability and was on medication. Application at 7. They contend that Mr. Martinez raised the claim on direct appeal before the Colorado Court of Appeals as a federal constitutional issue, but failed to raise

the claim before the Colorado Supreme Court. The Court does not agree that Applicant's failure to raise his claim in the Colorado Supreme Court after it was presented fairly to the Colorado Court of Appeals means this claim is unexhausted.

As previously stated, in order to exhaust state remedies, a claim must be presented to the state's highest court if review in that court is available. *See O'Sullivan*, 526 U.S. at 845. However, "there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available." *Id.* at 847-48. Therefore, if a state articulates that a certain avenue for relief is not part of its standard appellate review process, it is not necessary for a defendant to pursue that avenue in order to exhaust state remedies. *See id.*

The State of Colorado has articulated that review in the Colorado Supreme Court is not part of the standard state appellate review process. More specifically, the Colorado Appellate Rules provide that:

> In all appeals from criminal convictions or postconviction relief matters from or after July 1, 1974, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when a claim has been presented to the Court of Appeals or Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.

Colo. App. R. 51.1. Therefore, the Court finds that review in the Colorado Supreme Court is not required to exhaust state remedies if the claim in question was presented fairly to, and relief was denied by, the Colorado Court of Appeals.

Furthermore, the Court's conclusion is supported by the fact that four circuit courts have determined that state rules similar to Colo. App. R. 51.1 eliminate the need to seek review in the state's highest court in order to satisfy the exhaustion requirement. *See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004); *Adams v. Holland*, 330 F.3d 398, 401-03 (6th Cir. 2003); *Randolph v. Kemna*, 276 F.3d 401, 404-05 (8th Cir. 2002); *Swoopes v. Sublett*, 196 F.3d 1008, 1009-10 (9th Cir. 1999). The Court agrees with the analyses in these cases and other courts in the District of Colorado, *see, e.g.*, *Krogstad v. Leyba*, No. 07-cv-01074-PAB-KMT, 2010 WL 420043, *5 (D. Colo. Feb. 1, 2010) (unpublished), and rejects Respondents' argument that Applicant failed to exhaust his first claim because it was not raised in the Colorado Supreme Court in a petition for writ of certiorari after the claim was presented fairly to and rejected by the Colorado Court of Appeals. Therefore, having decided that Applicant's claim is exhausted, the Court will address the merits of the first claim. For the reasons stated in section IV below, the first claim will be dismissed.

**B.     CLAIM TWO**

Respondents contend that Mr. Martinez failed to exhaust his second claim, *i.e.*, that in No. 97CR127 the trial court did not grant him a continuance after his investigator withdrew one week before trial. Application at 8. They contend that Mr. Martinez raised the claim on direct appeal before the Colorado Court of Appeals as an issue of state law only, *see* Answer, Ex. A (opening brief in *Martinez I*) at 13-15, and failed to raise the claim before the Colorado Supreme Court. For the reasons stated in the discussion of

claim one in subsection A above, the Court finds that review in the Colorado Supreme

Court is not required to exhaust state remedies if the claim in question was presented

fairly to, and relief was denied by, the Colorado Court of Appeals.  Having reviewed the

state court record currently before the Court, this Court agrees that Mr. Martinez raised

claim two before the Colorado Court of Appeals as an issue of state law only and,

therefore, he failed to exhaust state remedies.  *See Estelle*, 502 U.S. at 67.  For the

reasons stated in subsection H below, the second claim will be dismissed as

procedurally barred.

C.     **CLAIM THREE**

Mr. Martinez complains that, in No. 97CR180, the trial court erroneously allowed

the admission of other acts evidence under Rule 404(b) of the Colorado Rules of

Evidence.  Application at 8-9.  Mr. Martinez raised this claim on direct appeal.  *See*

Answer, Ex. H part two (opening brief in *Martinez II*) at 27-31.  Although he used the

term "unconstitutional" in his argument heading, Mr. Martinez based his argument on

state law only.  *See id.*  He failed to make any argument based on the United States

Constitution or case law addressing federal constitutional principles.

As previously stated, a claim must be presented as a federal constitutional claim

in the state court proceedings in order to be exhausted.  *See Duncan*, 513 U.S. at 365-

66.  "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial

denied him the due process of law guaranteed by the Fourteenth Amendment, he must

say so, not only in federal court, but in state court.  *Id.* at 366.  Therefore, Mr. Martinez

failed to exhaust state remedies as to his third claim.  For the reasons stated in subsection H below, the third claim will be dismissed as procedurally barred.

**D.  CLAIM FOUR**

Mr. Martinez claims that, in No. 97CR180, the trial court erred in admitting evidence concerning prior uncharged rapes he committed because he provided that information to investigators as part of plea negotiations.  Application at 9-10. Mr. Martinez raised this claim on direct appeal pursuant to Colo. R. Evid. 410.  *See* Answer, Ex. H part two (opening brief in *Martinez II*) at 36-43.  However, he cites to federal case law, *i.e.*, *Santobello v. New York*, 404 U.S. 257, 260 (1971), and references his rights to due process rights and a fair trial under the Fifth, Sixth, and Fourteenth amendments to the United States Constitution.  *See* Answer, Ex. H part two (opening brief in *Martinez II*) at 38-39, 41; *see also* Answer, Ex. L (petition for writ of certiorari) at 15.  As such, he has exhausted the fourth claim.  The Court will address the merits of this claim and, for the reasons stated below in section IV, the fourth claim will be dismissed.

**E.  CLAIM FIVE**

Mr. Martinez complains that, in No. 97CR180, the trial court did not instruct the jury that, under Colo. Rev. Stat. § 18-1-505 (2007), consent is a defense to second-degree sexual assault.  Application at 10-11.  Although Mr. Martinez raised this claim on direct appeal primarily as an issue of state law, *see* Answer, Ex. H part two (opening brief in *Martinez II*) at 46-52, he does cite to federal case law, *i.e.*, *In re Winship*, 397

U.S. 358, 362 (1970), and references his due process rights under the Sixth and Fourteenth amendments. *See* Answer, Ex. H part two at 52. Respondents argue that, because Mr. Martinez failed to mention the United States Constitution in his petition for writ of certiorari to the Colorado Supreme Court, *see* Answer, Ex. L at 17-18, he has failed to exhaust his fifth claim. The Court disagrees. For the reasons stated in the discussion of claim one in subsection A above, the Court finds that review in the Colorado Supreme Court is not required to exhaust state remedies if the claim in question was presented fairly to, and relief was denied by, the Colorado Court of Appeals. The Court also finds that Mr. Martinez has exhausted his fifth claim, and will address the merits of claim five. For the reasons stated in section IV below, the fifth claim will be dismissed.

**F.    CLAIM SIX**

Mr. Martinez complains that the other act limiting instruction the trial court gave in No. 97CR180 was inadequate. Application at 11-12. Although Mr. Martinez raised this claim on direct appeal primarily as an issue of state law, *see* Answer, Ex. H part two (opening brief in *Martinez II*) at 31-36, he does cite to federal case law, *i.e.*, *Arizona v. Fulminante*, 499 U.S. 279 (1991), and references his rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth amendments. *See* Answer, Ex. H part two at 33, 34, 35; *see also* Answer, Ex. L (petition for writ of certiorari) at 21. The Court finds that Mr. Martinez has exhausted his sixth claim, and will address the merits of claim six. For the reasons stated in section IV below, the sixth claim will be dismissed.

**G.    CLAIM SEVEN**

As his seventh claim, Mr. Martinez alleges that he had ineffective assistance of counsel.  Respondents concede that this claim is exhausted.  *See* Answer, Ex. Y (opening brief in consolidated appeal Nos. 04CA1760 and 05CA1593) at 12-16; *see also* Answer, Ex. CC (petition for writ of certiorari) at 4-6.  The Court will address the merits of the seventh claim.  For the reasons stated in section IV below, the seventh claim will be dismissed.

**H.    PROCEDURAL DEFAULT OF CLAIMS TWO AND THREE**

Although Mr. Martinez failed to exhaust state court remedies as to his second and third claims, the Court may not dismiss those claims for failure to exhaust state remedies if he no longer has an adequate and effective state remedy available to him. *See Castille*, 489 U.S. at 351.  No further state court remedy exists because any future claim would be denied as successive under Colo. R. Crim. P. 35(c)(3) because it was or could have been presented in an appeal or postconviction proceeding previously brought.  *See* Colo. R. Crim. P. 35(c)(3)(VI) and (VII); *see also People v. Bastardo*, 646 P.2d 382, 383 (Colo. 1982) (stating that postconviction review is not available to address under a recently contrived constitutional theory issues that were raised previously).  Therefore, the second and third claims that Mr. Martinez failed to exhaust are procedurally defaulted.

As a general rule, federal courts "do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the

default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice."  *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998). Application of this procedural default rule in the habeas corpus context is based on comity and federalism concerns.  *See Coleman v. Thompson*, 501 U.S. 722, 730 (1991).  Mr. Martinez's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice. *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

To demonstrate cause for his procedural default, Mr. Martinez must show that some objective factor external to the defense impeded his ability to comply with the relevant procedural rule.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *United States v. Salazar*, 323 F.3d 852, 855 (10th Cir. 2003).  A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray*, 477 U.S. at 496; *see also United States v. Cervini*, 379 F.3d 987, 991-92 (10th Cir. 2004).  A "substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  To demonstrate a fundamental miscarriage of justice, Mr. Martinez first must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Id.* Mr. Martinez then must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id.* at 327.

Mr. Martinez fails to argue any basis for a finding of cause and prejudice or a fundamental miscarriage of justice in this action. Therefore, the Court finds that claims two and three, which Mr. Martinez failed to exhaust, are procedurally barred because he has failed to demonstrate cause and prejudice or a fundamental miscarriage of justice. Exhausted claims one, four, five, six, and seven will be addressed on the merits in section IV below.

## IV. MERITS OF THE EXHAUSTED CLAIMS

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court must review claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question is whether Mr. Martinez seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law

"refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [((10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either

> unreasonably extends, or unreasonably refuses to extend,
> a legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

The Court must review claims in which Mr. Martinez asserts factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to that court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct, and Mr. Martinez bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference

does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## A.    CLAIM ONE

Mr. Martinez claims he did not validly waive his right to counsel in No. 97CR127 because he had informed the trial court he had been diagnosed with a mental disability and was on medication. He raised his first claim in the state appeals court as a violation of his Sixth Amendment right to counsel.

A defendant may not waive his right to counsel if he is not competent to stand trial. *See Godinez v. Moran*, 509 U.S. 389, 396 (1993); *Maynard v. Boone*, 468 F.3d

665, 676 (10th Cir. 2006). The level of competency needed to waive counsel is the same as the level of competency needed to stand trial. *Godinez*, 509 U.S. at 398-99. A defendant is competent to stand trial where he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Id.* at 396 (citation and internal quotation marks omitted).

A court need only undertake a competency evaluation when it has reason to doubt the defendant's competence. *Id.* at 401 n.13. This can occur where the defendant acts irrationally or previously has been found incompetent. *See Drope v. Missouri*, 420 U.S. 162, 180 (1975).

The record shows that the "mental disability" Mr. Martinez informed the trial court he had concerned his post-prison "aggressiveness towards getting back involved in the work force," and that issue was addressed in vocational rehabilitation classes. *See* Answer, Ex. A (opening brief in *Martinez I*) at 11; *see also* trial tr., Nov. 20, 1997, hearing in 97CR127 at 12. Upon questioning by the trial court, Mr. Martinez stated that he did not have any difficulty understanding the proceedings and was not taking any prescription medication. *See* Answer, Ex. A at 11; *see also* trial tr., Nov. 20, 1997, hearing in 97CR127, at 13.

Because the state appeals court did not address the merits of the federal habeas claim Mr. Martinez raises here, the Court will exercise her own independent judgment in deciding the claim. *See Gipson*, 376 F.3d at 1196. The Court's review of the trial

18

transcript makes clear that, here, the only evidence of mental disability was that Mr. Martinez was having difficulty re-entering the work force after having been released from his prior incarcerations. As a result, the Colorado Court of Appeals held that Mr. Martinez's statement gave the trial court no reason to question his competency to stand trial and, therefore, there was no need for the trial court to order a competency evaluation. *See* Answer, Ex. D (*Martinez I*) at 4-5. The Court finds that the Colorado Court of Appeals' determination, that the trial court did not abuse its discretion by not undertaking a competency evaluation, was not contrary to Supreme Court case law. The first claim is without merit.

**B.     CLAIM FOUR**

Mr. Martinez claims that, in No. 97CR180, the trial court erred in admitting evidence concerning prior uncharged rapes he committed because he provided that information to investigators as part of plea negotiations. He raises his fourth claim as a violation of rights to due process and a fair trial.

As previously stated, federal habeas corpus relief does not lie for errors of state law. *Estelle*, 502 U.S. at 67, including questions about the admissibility of evidence. *Id.* at 67-68; *see also Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001). Only if the admission of evidence rendered a trial so fundamentally unfair as to constitute a denial of federal constitutional rights may a federal court interfere with state evidentiary rulings. *Estelle*, 502 U.S. at 67-68; *Moore*, 254 F.3d at 1246.

The Colorado Court of Appeals found as follows:

> While in custody, defendant wrote a letter to the
> Montrose County sheriff requesting that Mesa County
> authorities be advised that defendant had information
> regarding an unsolved 1979 homicide in Grand Junction.
> In a later interview with Mesa County authorities, defendant
> said he had forced nine women, including his sister, to have
> sex with him. Defendant repeated those assertions in a
> letter to the Mesa County District Attorney.

Answer, Ex. K at 8 (*Martinez II* at 158).

The Colorado Court of Appeals further found that:

> During his conversations with the Mesa County law
> enforcement officer, defendant requested consideration for
> his pending Montrose County charges in exchange for the
> information he was providing. The officer refused to discuss
> defendant's pending Montrose County cases and told him
> that any consideration would be up to defendant, his
> attorney, and the prosecuting attorney. Despite this rejection
> of his sole request for consideration, defendant continued to
> provide information to the officer and later conducted a taped
> interview with another officer.

> There is no evidence that any of the law enforcement
> officers with whom defendant spoke had authority to enter
> into any sort of plea negotiations or that defendant knew or
> suspected they did. Furthermore, it is clear that defendant
> never spoke with a prosecuting attorney and that no such
> attorney was aware of, or gave permission for, any plea
> negotiations. Nor is there any evidence that any of the law
> enforcement officials gave any indication that any
> concessions were possible.

> Defendant's unilateral choice to provide information
> to those who had no authority to conduct plea negotiations
> failed to transform his statements into disclosures made
> "in any connection with" any offers to plead guilty. Thus,
> those statements do not fall within the ambit of [Colo. R.

> Evid.] 410, and consequently the trial court was correct in
> denying defendant's motion to suppress his statements.

Answer, Ex. K at 11-12 (*Martinez II* at 161).

Because the state appeals court did not address the merits of the federal habeas claim Mr. Martinez raises here, the Court will exercise her own independent judgment in deciding the claim. *See Gipson*, 376 F.3d at 1196. It is clear from the state record that Mr. Martinez asked a single time for "consideration" in his pending Montrose County cases for the information he gave about the 1979 homicide. *See* Answer, Ex. I part two (answer brief in *Martinez II*) at 26; *see also* trial tr., Apr. 30, 1998, motions hearing in No. 97CR180, 192-page PDF at 27, 59, and 61-62. In response, he was told by the Montrose investigator that any consideration "would be up to him and his attorney and the prosecuting attorneys." *See* Answer, Ex. I part two (answer brief in *Martinez II*) at 26; *see also* trial tr., Apr. 30, 1998, motions hearing in No. 97CR180, 192-page PDF at 29.

When Mr. Martinez was interviewed by officers from the Mesa County Sheriff's Office, the jurisdiction in which the unsolved 1979 homicide occurred, he repeatedly told them his motive in speaking about the murder was to clear his conscience, *see* Answer, Ex. I part two (answer brief in *Martinez II*) 26-27; *see also* trial tr., Apr. 30, 1998, motions hearing in No. 97CR180, 192-page PDF at 76, and to retaliate against his wife for refusing to intervene in the case concerning his attempt to rape their daughter, *see* Answer, Ex. I part two (answer brief in *Martinez II*) 26-27; *see also* trial tr., Apr. 30, 1998, motions hearing in No. 97CR180, 192-page PDF at 77-78, and that he was not

asking for any deal or consideration.  *See* Answer, Ex. I part two (answer brief in *Martinez II*) at 26-27; *see also* trial tr., Apr. 30, 1998, motions hearing in No. 97CR180, 192-page PDF at 76, 78, and 108.  He also never asked the officers to contact the Montrose County district attorneys and intervene on his behalf.  *See* Answer, Ex. I part two (answer brief in *Martinez II*) at 26-27; *see also* trial tr., Apr. 30, 1998, motions hearing in No. 97CR180, 192-page PDF at 79-80 and 108.

The Colorado Court of Appeals held that there had been no violation of Colo. R. Evid. 410 because the rule applies only to "discussions between defense counsel, or *pro se* litigants, and prosecuting attorneys" who have specific authority to bind the government in plea agreements, and does not apply to discussions between crime suspects and law enforcement agents.  *See* Answer, Ex. K at 11 (*Martinez II* at 161). The record shows that Mr. Martinez did not provide information to investigators as part of plea negotiations.

Nothing was fundamentally unfair about admitting Mr. Martinez's statement where no state official was involved in plea negotiations with him.  The Colorado Court of Appeals' disposition of this issue was not contrary to clearly established federal law in *Estelle* and *Moore*.  The fourth claim is meritless.

## C.    CLAIM FIVE

As his fifth claim, Mr. Martinez complains that, in No. 97CR180, the trial court also erred by not instructing the jury that, under Colo. Rev. Stat. § 18-1-505, consent is

a defense to second-degree sexual assault.  He asserts the fifth claim as a violation of his due process rights.

It was clearly established when Mr. Martinez was convicted that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. at 364; *see also Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993).  As a result, "a jury instruction violates due process if it fails to give effect to that requirement."  *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).

> Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.  The question is "'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'"  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "'[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'"  *Boyde v. California*, 494 U.S. 370, 378 (1990) (quoting *Cupp*, *supra*, at 146-147).  If the charge as a whole is ambiguous, the question is whether there is a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."  *Estelle*, *supra*, at 72 (quoting *Boyde*, *supra*, at 380).

*Middleton*, 541 U.S. at 437 (parallel citations omitted).

The Court must review Mr. Martinez's claim *de novo* because the claim was not adjudicated on the merits as a federal constitutional claim by the state courts.  *See Gipson*, 376 F.3d at 1196.  The Colorado Court of Appeals held that Colorado law, specifically *Dunton v. People*, 898 P.2d 571 (Colo. 1995), does not provide for

instructing a jury on the affirmative defense of consent in a sexual assault case because

proof of the elements of the offense necessarily involves proof and findings beyond a

reasonable doubt that the victim did not consent to the defendant's conduct. *See*

Answer, Ex. K at 12-13 (*Martinez II* at 162). The state appeals court reasoned as

follows:

> Defendant contends the trial court committed reversible error by relying on *Dunton v. People*, 898 P.2d 571 (Colo. 1995), and its progeny and by refusing to instruct the jury on the affirmative defense of consent concerning the charges of second degree assault by penetration and second degree assault by intrusion. We disagree.
>
> Affirmative defenses provide a legal justification for what would otherwise be criminally culpable behavior. *People v. Reed*, 932 P.2d 842 (Colo. App. 1996). In general, consent is an affirmative defense. See § 18-1-505, C.R.S. 2000. However, "[t]he consent of the victim to conduct charged to constitute an offense or to the result thereof is not a defense unless the consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense." Section 18-1-505(1), C.R.S. 2000.
>
> In *Dunton v. People*, *supra*, the supreme court held that consent was not an affirmative defense to the charge of first degree sexual assault by the application of physical force and violence. The court reasoned that "the first degree sexual assault statute prohibits conduct which by its very nature negates the existence of the victim's consent. The statute equates the victim's nonconsent with proof that the defendant has caused the victim's submission by force, by threat either of great harm or of retaliation, or by deception . . . . These acts of the defendant cause the victim to be unable to consent." *Dunton v. People*, *supra*, 898 P.2d at 573 (citation omitted).

The applicable version of the second degree sexual assault statute here provided:

>Any actor who knowingly inflicts sexual penetration or sexual intrusion on a victim commits sexual assault in the second degree if:

>(a)  The actor causes submis-sion of the victim to sexual penetration by any means other than those set forth in Section 18-3-402 [first degree sexual assault], but of sufficient consequence reasonably calculated to cause submission against the victim's will; or

>(b)  The actor causes submission of the victim to sexual intrusion by any means other than those set forth in Section 18-3-402, but of sufficient consequence reasonably calculated to cause submission against the victim's will . . . .

As the trial court determined, [the second degree sexual assault statute], like the first degree sexual assault statute discussed in *Dunton v. People*, *supra*, equated the victim's nonconsent with proof that the defendant had caused the victim's submission by means "of sufficient consequence reasonable calculated to cause submission against the victim's will."  Thus, the jury could only convict a defendant after concluding that the prosecution had proved the victim's lack of consent beyond a reasonable doubt.

Moreover, the jury here was correctly instructed on the elements of second degree sexual assault and on the prosecution's burden to prove all elements beyond a reasonable doubt.  Additionally, defendant's theory of the case instruction, stating that the sexual activity was "by mutual consent," was also given.

Consequently, because the instructions as a whole adequately informed the jury, the trial court committed no error in refusing to give defendant's instruction on the affirmative defense of consent.

*Martinez II* at 162.

Here, the trial court did not err in failing to instruct the jury on consent as a defense to second-degree sexual assault because proof of the elements of the offense necessarily involved proof and findings beyond a reasonable doubt that the victim did not consent to Mr. Martinez's conduct. In short, the jury could only convict Mr. Martinez after concluding that the prosecution had proved the victim's lack of consent beyond a reasonable doubt.

The Court finds that the jury instruction did not violate Mr. Martinez's due process rights because the jury convicted him upon proof beyond a reasonable doubt of every fact necessary to constitute second-degree sexual assault, the crime with which he was charged. As such, the instruction did not so infect the entire trial that the resulting conviction violates due process. *See Estelle*, 502 U.S. at 72. The Colorado Court of Appeals' disposition of this issue was not contrary to clearly established federal law. The fifth claim is meritless.

**D.    CLAIM SIX**

Mr. Martinez alleges that the other act limiting instruction the trial court gave in No. 97CR180 was inadequate. He specifically alleges that the instruction was vague, confusing, and misleading, and that the judge should have instructed the jury that the "uncharged misconduct evidence" was never substantiated and on "the purpose [for

26

which] it was intended" in this case.  Application at 11.  He asserts the sixth claim as a due process violation.

As previously stated, an instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and in context of the trial record."  *Estelle*, 502 U.S. at 72 (citations and internal quotation marks omitted) ("The only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.").  Upon request, a court must instruct the jury that similar acts evidence is to be considered only for the proper purpose for which it was admitted.  *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988).  In addressing a limiting instruction, the United States Court of Appeals for the Tenth Circuit has held that "[a] jury instruction, even if erroneous, is not constitutionally defective unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense or is otherwise constitutionally objectionable as, for example, by transgressing the constitutionally rooted presumption of innocence)."  *Webber v. Scott*, 390 F.3d 1169, 1180 (10th Cir. 2004) (citation and internal quotation marks omitted).

The Colorado Court of Appeals found that the limiting instructions given were proper.  *See* Answer, Ex. K at 13-14 (*Martinez II* at 163).

> The limiting instructions did not simply parrot the language of CRE 404(b).  Instead, with regard to defendant's prior sexual assaults that had resulted in convictions, the limiting instruction included only those purposes that related to defendant's having committed sexual assaults in a distinctive manner (*i.e.*, common plan, scheme, or design,

*modus operandi*, intent, and preparation) or that refuted
defendant's defenses of consent and recent fabrication.
The court omitted the remaining purposes for CRE 404(b)
evidence, *i.e.*, motive, opportunity, knowledge, identity, and
absence of mistake or accident from that instruction.

With regard to the evidence of defendant's
admissions of prior sexual misconduct, the court instructed
the jury that it could consider that evidence only for the
purposes of refuting the defenses of consent or recent
fabrication regarding the alleged sexual assaults on
September 5, 1997, and for no other purpose.

In addition, the trial court distinguished between the
two types of uncharged misconduct evidence and the
separate purposes for which each type was to be used.
There is no indication that the jury failed to apply the
instructions properly. *See People v. Dunlap*, 975 P.2d 723
(Colo. 1999).

Accordingly, no error occurred.

*Martinez*, 36 P.3d at 163.

Because the state appeals court did not address the merits of the federal habeas

claim Mr. Martinez raises here, the Court will exercise her own independent judgment in

deciding the claim. *See Gipson*, 376 F.3d at 1196. It is clear from the state record that

the trial court provided the following limiting instruction to the jury on the second and

third days of trial before the testimony of two women alleged to have been victims of

prior sexual assaults by Mr. Martinez:

THE COURT: Certain evidence may be admitted
for a particular purpose only and not for any other. The
testimony you are about to hear is such evidence. It may
be considered for the purpose of showing common plan,
scheme, design, modus operandi, motive, intent and
preparation, refuting defenses such as consent and recent

> fabrications, and you should consider it as evidence for no
> other purpose.

Trial tr., vol. 2, 244, Sept. 9, 1998 (Trial to Jury in No. 97CR180); *see also* trial tr. vol. 3,

73-74, Sept. 10, 1998 (Trial to Jury in No. 97CR180).

The trial court also provided a similar instruction to the jury on the fourth day

of trial. *See* trial tr., vol. 4, 3-4, Sept. 11, 1998 (Trial to Jury in No. 97CR180).

Mr. Martinez fails to argue any basis for finding that the limiting instruction given

conveyed to the jury something other than the limited purpose for which the other

crimes evidence was being admitted. The Court does not find that the other act limiting

instruction given by the state trial court, even if inadequate, rendered the trial as a whole

so fundamentally unfair as to constitute a constitutional violation. As a result, the state

court's decision was not contrary to clearly established federal law.

## E.   CLAIM SEVEN

Incorporating by reference his postconviction reply brief, *see* Answer, Ex. AA

(reply brief in consolidated appeal Nos. 04CA1760 and 05CA1593), Mr. Martinez

complains that his counsel in No. 97CR180 was ineffective for various reasons set forth

in his opening brief. Application at 12, 16-19. In the opening brief, *see* Answer, Ex. Y

(opening brief in Nos. 04CA1760 and 05CA1593) at 14-16, Mr. Martinez contends that

his trial counsel was deficient because counsel failed to:  (1) cross-examine the

complaining witness regarding memory loss, (2) investigate the issue of competency,

(3) establish client control, (4) pursue the severance motion, (5) argue the admissibility

of prior convictions, (6) question jurors regarding possible bias, (7) object to previously

undisclosed evidence of alleged brain tumor, (8) cross-examine complaining witness regarding numerous inconsistencies, (9) object to numerous improper comments and questions by the district attorney, (10) make numerous evidentiary objections, and (11) cross-examine prosecution witnesses adequately or impeach witnesses as to their credibility.

The Supreme Court has established a two-prong test to review claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). Mr. Martinez must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance was prejudicial. *See id.* at 687-88. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is the defendant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.*

In order to demonstrate prejudice, Mr. Martinez must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland* at 694.

If Mr. Martinez fails to satisfy either prong of the two-part *Strickland* test, the ineffective-assistance-of-counsel claim must be dismissed. *See id.* at 697. Finally, ineffective-assistance-of-counsel claims are mixed questions of law and fact. *See id.* at 698.

In addressing the ineffective-assistance-of-counsel claim, the Colorado Court of Appeals resolved Mr. Martinez's claim on the prejudice prong of the *Strickland* test, holding that he failed to prove he suffered prejudice from his counsel's actions as follows:

> Here, the record supports the district court's findings that evidence independent of the counsel's allegedly deficient performance supported the jury's determination of guilt. That evidence included defendant's own letters to, and conversations with, law enforcement personnel, during which defendant admitted to forcibly having sex with a number of women, and testimony from prior victims as to defendant's modus operandi. *See Martinez II, supra*, 36 P.3d at 158-61 (evidence of defendant's letters and admissions, as well as prior bad acts evidence from former victims, was properly admitted in the trial). Therefore, we agree with the district court that defendant fails to prove that he suffered prejudice from counsel's actions.

*See* Answer, Ex. BB (Nos. 04CA1760 and 05CA1593) at 5.

Pursuant to 28 U.S.C. § 2254(e)(1), the Court must presume that the Colorado Court of Appeal's factual determination is correct and Mr. Martinez bears the burden of rebutting the presumption of correctness by clear and convincing evidence. Mr. Martinez has not presented clear and convincing evidence to rebut the presumption of correctness. The Colorado Court of Appeals' determination that Mr. Martinez did not suffer any prejudice from his counsel's performance did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

## V. CONCLUSION

Based on the foregoing facts and law, Mr. Martinez's § 2254 application should be denied and the instant civil case dismissed. Accordingly, it is

ORDERED that the habeas corpus application pursuant to 28 U.S.C. § 2254 is DENIED, and the civil action is dismissed WITH PREJUDICE. It is

FURTHER ORDERED that any pending motions are denied as moot. It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees. It is

FURTHER ORDERED that no certificate of appealability will issue because Applicant, Richard Lee Martinez, has not made a substantial showing of the denial of a constitutional right.

DATED at Denver, Colorado, this __30th__ day of June, 2010.

BY THE COURT:

_Christine M Arguello_
_____
CHRISTINE M. ARGUELLO
United States District Judge